ABBEN, P.
It was alleged in argument, though not assigned as one of the errors in the petition, that as the bond required from Edwin Godwin, administrator of Peter Zeluff deceased, in pursuance of the act of assembly passed the 9th of March 1838, entitled an act authorizing the sale of the lands of Peter Zeluff in the county of Nansemond, was not executed by him within two months after the passage of the act, the bond was taken without authority, and therefore void.
The act referred to, conferred on the County court jurisdiction to authorize the said administrator to sell and convey on such terms as the court might deem expedient, and to decree the mode in which he should account for the bonds or other proceeds of said sale to those entitled thereto, having first required of the said administrator a new bond, with such security as the court should deem sufficient, conditioned to perform the decree of the court, and account for the proceeds of said sale to the parties entitled thereto, according to the directions of the court. On the 14th of May 1838 the widow and children, devisees of Peter Zeluff, petitioned the County court to carry the act into effect by making the necessary order. The court, upon the presentation of the petition, entered a decree or order, which, after reciting that the administrator had given bond under and according to the act of assembly, authorized him, after advertising the land, to sell the same on a credit of six, twelve and eighteen months, (except for so much as would pay costs and charges of the sale and decree,) the whole carrying interest from the first day of January ensuing, taking from the purchaser three bonds with security and a deed of trust on the land to secure *563 the purchase money; the bonds to be payable to said E. Godwin, administrator, and *to be returned to the said County court, and to be subject to their order: the decree further reciting-, that the court would, at a future day', make a further order disposing of the fund to be raised by a sale of said land, and also make any other order in the premises which might seem proper.
On the 10th of April 1843 Edwin Godwin made a report, showing that the land was sold on the 9th of July 1838_, to Elizabeth Godwin, who, with her securities, executed three bonds for one thousand dollars each, and paid the residue in cash: and he filed with his report two of the bonds; one subject to a credit of three hundred and fifty dollars, paid the 12th of December 1840, and to a further credit of fifty dollars, paid March 22d, 1841, endorsed by him as administrator; the balance of said amount the report states had been paid to the administrator. The bonds or single bills filed with the report, do not set forth the consideration for which they were given, and are payable to him as administrator. By the report Edwin Godwin charged three hundred and nineteen dollars and fifty-three cents for commission and expenses of sale. When this report was filed, it was ordered to lie for exceptions ; and on the 12th of August 1844, the widow and children of P. Zeluff excepted to the report on account of the charge for commission and expenses, and because he did not bring- the bonds into court.
On the 14th of July 1845, the cause coming on to be heard on the report, exceptions and papers, the County court was of opinion that the principles of the case should not be settled until all the parties interested were before the court; and therefore ordered that Elizabeth Godwin the purchaser, with her securities, and also the securities of Edwin Godwin in the administration bond, should be summoned to show cause why the exceptions should not be sustained, and *to show cause if any they had against the said report and sale, and to abide such order as the court might pronounce in the case.
The summons being executed, the securities of Edwin Godwin filed answers, relying, amongst other things, on the ground that the two months prescribed in the act having expired, the authority of the court to appoint the said E. Godwin to sell the land had ceased and determined; and consequently the bond not having been executed in conformity with the statute, was merely null and void.
The cause being matured for hearing, the County court dismissed the petition: Whereby it was in effect decided, that the sale made by said Edwin Godwin was invalid ; and the plaintiffs, if the decree had stood, would have been left to pursue their legal remedy to recover the land as devisees of Peter Zeluff. Upon appeal to the Circuit court this decree was reversed, and a decree pronounced declaring that Edwin Godwin was liable to account to the appellants for the whole amount paid to him by the purchaser of said land; and in the event of his estate being insufficient to pay, that the securities in the bond were liable; and that the purchaser was liable for the balance due on her bonds. Por the payment of such balance of the purchase monej’-, a decree was rendered directing a sale of the land, recited by the decree as having been conveyed by said Edwin Godwin to Elizabeth Godwin. The land was sold, and the proceeds not being sufficient to pay off the balance of the purchase money due from the purchaser on her bonds, a personal decree was rendered against her and her securities for such balance, after crediting the net proceeds of-the sale of the land. And the decree against the estate of Edwin Godwin having proved unavailing, a decree was rendered against the securities in his bend for the amount received by him.
*Erom this decree the sureties of Edwin Godwin obtained an appeal to this court; and the Special court of appeals being of opinion that it was error in this proceeding in the state in which it stood in the Circuit court, to render a decree against the said securities of Edwin Godwin, or to determine whether those securities or the purchaser were primarily liable for the money improperly received by Edwin God-win ; and that it was also error in this proceeding to render a decree against the sureties of the purchaser for the balance due on her bonds for the purchase money; and that there was no error in the residue of the said decree, more especially as Elizabeth Godwin had not appealed therefrom; reversed so much of the decree of the Circuit court so declared to be erroneous, and affirmed the residue thereof; and remanded the cause with directions to allow the petitioners to file a bill bringing Elizabeth Godwin and her sureties, and the sureties of the said Edwin Godwin in said new bond, properly before the court, and in due form for litigating the several matters in respect to which the decree had been reversed.
When the cause went back, the petitioners filed a new bill, from which it appeared that the balance due on the bonds for the purchase money had been fully paid and satisfied; and the contest went on as to the amount received by the said Edwin God-win.
The sureties in the new bond appeared and answered, referring to and relying on their former answer; and furthermore insisted, as they had done in the former answer, that the payment of the purchaser was made to Edwin Godwin without authority; that she thereby aided him in perpetrating a fraud, and that the payment so made in her own wrong, did not discharge the obligations given for the purchase money. The sureties of the purchaser and her administrator insist on the validity of the payment, and that *they had fully discharged themselves from the liability incurred by their obligation for the puchase money. No new fact was *564 brought into the case by this supplemental proceeding: and the court being of opinion that the sureties of Edwin Godwin were liable, for the amount paid to him, and the decree against his estate proving unavailing, proceeded to render a dceree against the sureties for the balance unpaid; from which decree the representatives of one of said sureties has appealed.
Upon these proceedings it seems to me the authority of the County court to decree the sale of the land by Edwin Godwin has been adjudged, and in a proceeding to which, as to that question, all the sureties were parties.
As to which set of sureties were primarily liable, or whether any valid payment was made by the purchaser, or whether her payments were fraudulent in fact or not; these were questions which, in the opinion of the Special court of appeals, could not be decided in that proceeding as it then stood. The proceeding was upon the original petition to exercise the jurisdiction conferred by the act of the 9th of March 1838. Under that act the new bond had been taken from the administrator Edwin Godwin, and a decree rendered directing him to sell, and a sale and a report made; and all the parties, the sureties in the new bond executed by the administrator, and the purchaser and her sureties, were summoned to show cause against the said report and sale, and to abide such other orders as the court might pronounce in .the cause. If the authority of the court to appoint the administrator had ceased, the judgment of the County court dismissing the petition should have been affirmed. The power of the court to render any decree in that ex parte proceeding to carry out the provisions of the act of March 9th, 1838, depended upon the fact whether a valid *bond had been given by the administrator; the law having conferred the jurisdiction on the court to authorize the administrator to sell and convey upon the condition of having first required of him a new bond. The court required a bond, and thereupon ordered the sale. The jurisdiction to do so being conferred, the propriety of exercising it under the circumstances, was a question for its consideration when applied to by the petitioners to carry the act of assembly into effect. By accepting the bond, and thereupon authorizing the administrator to sell, the court affirmed that the bond, though not executed until after the expiration of two months, was a substantial compliance with the law, and invested the court with the power to authorize the administrator to sell. At a later period the County court changed its opinion, and dismissed the petition, thereby annulling all that had been done, and declining to carry the act of assembly into effect according to the prayer of the petition. The case itself was proper for the consideration of these questions. The regularity of the proceedings and the propriety of exercising jurisdiction under the facts before the court were questions arising in the case itself, and not upon any collateral enquiry: And a judgment would be conclusive, at least to that extent, upon all who were made or became parties to the case. The administrator, the securities in the new bond, the purchaser, and her securities, all had such an interest in these questions as to justify the order requiring them to be summoned to show cause against the report and sale. They were summoned and the sureties of the administrator raised the objection to the authority of the court to require the new bond: The Circuit court by its decree affirmed the validity of the bond and the sale; affirmed, moreover, that by the sale of the land and its conveyance by Edwin Godwin to the purchaser, the title had passed to her; for it proceeds to ^decree a sale of the land to discharge the balance of the purchase money. The land was sold under its order, and the sale confirmed; thus forever divesting the title of the petitioners, in this proceeding, to carry into effect the provisions of the act of March 9th, 1838: A conclusion which could only be justified upon the ground, that the authority conferred by that act had been properly exercised. The decree of the Circuit court to the extent that it operated upon the validity of the sale, the divesting of the title of P. Zeluff’s devisees, and the transmission thereof to the purchasers under the different decrees in the case, was affirmed by the Special court of appeals, and at least concludes all those who were parties, upon those questions.
If the bond was valid and the sale regular, it becomes necessary to ascertain what was the authority vested in Edwin Godwin the administrator, by the decree entered on the ex parte application of the petitioners to carry the law into effect, 'and the liability imposed on him. Did he act as an ordinary commissioner appointed by a court in a chancery suit to perform some specific duty? Or did he act as an administrator having an authority derived from, and to be governed by, the law under which the proceeding was had? It seems to me the rights and duties of the administrator are to be deduced from the terms of the law under which the court was acting, rather than to be measured by those of a commissioner appointed by the court as its agent to carry into effect a decree rendered in the exercise of its ordinary jurisdiction. As administrator he had given bond to administer the personal assets of the deceased. That would not have covered the proceeds of this land, to be sold under the authority of this special act. The court is therefore, before authorizing a sale, to require a new bond of the administrator. Showing by the ^expression new bond, *that the term “administrator” was not a mere description of the person, but that the authority was given to him in his official character. By the condition of the bond prescribed by the law, he was bound to perform the decree of the court, and account for the proceeds of said sale to the parties entitled thereto, according to the directions of the court.
It is clear from the condition prescribed, *565 that the law did not contemplate that he was to be a mere agent to sell or to perform some particular duty assigned to him as the agent of the court. It looked not only to his duty to sell, but his authority to collect, and his liability for the proceeds to the parties entitled thereto, according to the directions of the court. • He was not to determine between the claims of the widow and devisee. The law provided that the proceeds should pass to the same persons and in the same proportions a s the real estate would have passed, had the act never been enacted. Who were the persons entitled and in what proportions, the court was to determine with these parties before it. When the parties were thus ascertained and their proportions fixed, the condition of the bond bound the administrator to pay them. The law provided that the court should have power and authority to authorize the administrator to sell and convey the land. In the exercise of the ordinary jurisdiction of a court of equity, one commissioner may be appointed to sell, a second to convey, a third to collect. Here it is manifest the law looked to a sale, conveyance and collection by the administrator, under a special authority given to him in his character as such administrator. He was empowered by law to do what as administrator with the will annexed he could have done if the will had devised the land to be sold by the personal representative. He was to sell on such terms as the court might prescribe, which had reference to the time and place of *sale, credit to be given, security to be required, &c. ; but did not change or modify the liability incurred by the condition of the bond.
The decree conformed to the terms of the act. It authorized him to sell in a prescribed mode, taking from the purchaser three bonds with good security and a deed of trust on the land to secure the payment of the purchase money. The bonds to be payable to the said Edwin Godwin, administrator, &c., and to be returned to the court, and to be subject to their order; reciting also, that the court will proceed at a future day to make further orders disposing of the fund to be raised by a sale of said land.
The decree shows that the court contemplated that the administrator was to convey without further order. It required no report of sale, and did not contemplate any confirmation thereof in order to justify a deed. On the contrary, by requiring a deed of trust on the land to be given by the purchaser, it recognized the right of the administrator to convey as well as to sell, as a right conferred by the law upon giving the bond and being authorized to sell. By directing the bonds to be payable to said Edwin Godwin, administrator, the individual to receive was pointed out to the obli-gor. The purchaser became no party to any subsequent proceedings in the case. No confirmation of sale being necessary, the decree did not require it, and no such order was made. The decree of the Circuit court recites the fact that a conveyance was made, treats it as a regular transfer of the title, and in this respect has been affirmed,
As soon then as she gave her bonds for the purchase money and received her deed, the purchaser ceased to have any direct connection with the cause in court. She was not bound to enquire whether the bonds were returned to the court, or what disposition was made of them. That portion of the decree directing them to ''be returned could not affect the powers of the administrator as conferred by the act. Nor does it, as it seems to me, bear any such construction. The court, in the order, referred to the bonds as the proceeds of the sale, and as synonymous with the fund to be raised by the sale of the land; which fund the order recites the court would at a future day proceed to make a further order disposing of. This was the duty of the court under the act which declared that the proceeds should pass to the same persons and in the same proportions as the real estate would have passed if the act had not been enacted. With this distribution the purchaser had no concern. Having a deed and being authorized to pay to the obligee so as to relieve the land from the incum-brance and discharge her obligations, those entitled to the fund were protected by the condition of his bond to account for the proceeds of the sale. If the bonds had been returned, and upon ascertaining who were the persons entitled to the fund and in what proportions, the court, if such had been the most convenient course, might have directed the bonds to have been assigned by Edwin Godwin to the parties, ánd a payment to him after notice of such assignment would have been no discharge. Until that or some other measure was taken to prevent his receiving the proceeds, it was the right and duty of the purchaser to pay to the obligee, constituted by the law under which the proceeding was had, a trustee to sell, convey and receive, and to account for the proceeds to those who were entitled thereto. I think therefore the purchaser was justified in making payment to Edwin Godwin whilst he retained the bonds in his possession; and such payments, if made in good faith, operated as a discharge pro tanto of the purchase money. No attempt has been made to show that the purchaser was guilty of any fraud; that she knew that Edwin Godwin intended to misapply the funds, or that *he had any such intention when he received them. It does not distinctly appear at what time the first bond was discharged. The credits on the second bond are after the bond fell due. The administrator reports that all but the two bonds returned by him in April 1843, had been paid to him; and in the absence of any allegation or proof to the contrai-y, the presumption would be that the payment of the first bond was not made until it became due. I think that looking to the authority of Edwin Godwin under this special act, the payment was valid; and therefore deem it unnecessary to express any opinion as to the effect of a payment *566 made under such circumstances to a commissioner appointed to sell by a chancery court in the exercise of its ordinary jurisdiction. I am for affirming the decree.
MONCURE and SAMUELS, Js., concurred in the opinion of Allen, J.
DANIEL and LEE, Js., dissented.
Decree affirmed.